1
2
3
4
5
6
7
8                      **UNITED STATES DISTRICT COURT**

9                     **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MULTIMEDIA PATENT TRUST,                CASE NO. 12-CV-2731-H (KSC)

12                              Plaintiff,   **ORDER GRANTING LG'S**
                                             **MOTION FOR SUMMARY**
         vs.                                 **JUDGMENT**
13
                                             **[Doc. No. 67]**
14   LG ELECTRONICS, INC., a Korean
     corporation; LG ELECTRONICS
15   U.S.A., INC., a Delaware corporation;
     and LG ELECTRONICS
16   MOBILECOMM U.S.A., INC., a
     California corporation,
17
                              Defendants.
18

19        On June 19, 2013, LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG

20   Electronics Mobilecomm U.S.A., Inc. (collectively "LG") filed a motion for summary

21   judgment of claim preclusion and/or issue preclusion based on the jury's verdict of no

     infringement of a representative claim in a related case, Case No. 10-cv-2618.  (Doc.
22
     No. 67, 75.)[1]  On July 5, 2013, Plaintiff Multimedia Patent Trust ("MPT") filed a
23
     response in opposition to LG's motion.  (Doc. No. 83.)  On July 10, 2013, LG filed its
24
     reply.  (Doc. No. 91.)  On July 17, 2013, the Court held a hearing on LG's motion for
25

26   _____

27        [1] All record citations are to the current case, Multimedia Patent Trust v. LG
     Electronics, Inc., No. 12-cv-2731 (S.D. Cal., filed Nov. 8, 2012) unless the citation is
     preceded by "10-cv-2618-" meaning that the citation is to Multimedia Patent Trust v.
28   Apple, Inc., No. 10-cv-2618 (S.D. Cal., filed Dec. 20, 2010).

summary judgment.  Frederick Lorig and Christopher Mathews appeared for MPT. Justin Barnes, Michael McKeon, Richard Sterba, Lara Garner, and Francis Albert appeared for LG.  LG asks the Court to hold MPT to its prior representations to the Court that the infringement analysis for the MSM6575 chip was representative of the chips the Court severed into the present action.  MPT disagrees.  After due consideration, the Court grants LG's motion for summary judgment.

### Background

On December 20, 2010, Plaintiff MPT filed a complaint for patent infringement against Defendants Apple, Inc. ("Apple"), LG, and Canon U.S.A., Inc. and Canon, Inc. ("Canon").  (10-cv-2618-Doc. No. 1, Compl.)   The complaint alleged that the Defendants were liable for infringement of one or more of four patents related to video compression technology:  U.S. Patent Nos. 4,958,226 ("the '266 Patent") entitled "conditional motion compensated interpolation of digital motion video;" 5,227,878 ("the '878 Patent") entitled "adaptive coding and decoding of frames and fields of video;" 5,500,678 ("the '678 Patent") entitled "optimized scanning of transform coefficients in video coding;" and 5,136,377 ("the '377 Patent") entitled "adaptive non-linear quantizer." (Id.) On March 21, 2011, Apple, LG, and Canon filed their answers. (10-cv-2618-Doc. Nos. 38-39, 41.)

On May 31, 2011, the Court issued a scheduling order requiring MPT to serve its preliminary infringement contentions by December 8, 2011.  (10-cv-2618-Doc. No. 65.)  On December 8, 2011, MPT served its preliminary infringement contentions, but acknowledged that they were not as detailed as they might have been.  (10-cv-2618-Doc. No. 122.)   On December 16, 2011, the Court granted MPT more time to investigate its infringement contentions, and the Court set a new deadline of May 1, 2012 for MPT to serve on the Defendants its revised and supplemental infringement contentions.  (Id.)

On May 1, 2012, MPT served its revised supplemental infringement contentions.

(10-cv-2618-Doc. No. 328-1, Declaration of Christopher Mathews ("Mathews Decl.") Exs. 4-6.) MPT's supplemental infringement contentions against LG contained incomplete claim charts for five Qualcomm chips: the MSM6500, the MSM6550A, the MSM6575, the QSC6075, and the QSC6075-Turbo. (Id. Ex. 5.) The contentions explained that MPT had provided charts for those five chips because nonparty Qualcomm had only provided MPT with software source code for five of its nineteen chips. (Id. Ex. 5 at 4.) The contentions also stated that the claim charts for the five Qualcomm chips were "representative of how the Group LG-1 products infringe the asserted claims of the '377 patent." (Id. at 8; see also id. at 4 ("Although MPT has to date been provided access to only a subset of all the relevant source code, its analysis of that source code, considering the commonality of features in the Qualcomm ARM source code and the commonality of the features and files included in the wrapper source code, strongly suggests that all of the Group LG-1 products, i.e., all those using a Qualcomm chip, will encode and decode video in a similar way for purposes of MPT's infringement analysis.").)

The Defendants moved to strike MPT's supplemental infringement contentions, arguing that the contentions were deficient because they did not contain complete claim charts for all the accused products. (10-cv-2618-Doc. No. 162.) On May 30, 2012, the Court denied the motions to strike without prejudice. The Court stated that MPT would be permitted to amend its infringement contentions to cure any alleged deficiencies if MPT met the requirements of former[2] Patent Local Rule 3.6[3] or if it demonstrated good

---

[2] The Southern District of California amended its Patent Local Rules on February 8, 2013.

[3] Former Patent Local Rule 3.6 provided that each party's "Preliminary Infringement Contentions" will be deemed to be that party's final contentions, except: "If a party claiming patent infringement believes in good faith that (1) the court's Claim Construction Ruling so requires, or (2) the documents produced pursuant to Patent L.R. 3.4 so require, then not later than thirty (30) days after service by the court of its Claim Construction Ruling, that party may serve "Final Infringement Contentions" without leave of court that amend its "Preliminary Infringement Contentions" with respect to

12cv2731

cause and diligence in compliance with <u>O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.</u>, 467 F.3d 1355, 1366 (Fed. Cir. 2006) and former Patent Local Rule 3.7.[4] (10-cv-2618-Doc. No. 175.)

On June 8, 2012, after conferring with the parties, the Court issued a scheduling order for the case management deadlines up to trial. (10-cv-2618-Doc. No. 184.) This Order required MPT to serve its final infringement contentions by September 4, 2012. (<u>Id.</u>) On September 4, 2012, MPT served its final infringement contentions.[5] (10-cv-2618-Doc. No. 328-1, Declaration of Chris Mathews Exs. 1-3.) MPT's infringement contentions for LG referred to several Qualcomm chips that were utilized by the accused products, specifically the Group LG-1 accused products, but MPT only provided a claim chart for a single Qualcomm chip, the MSM6575 chip. (<u>Id.</u> Ex. 2.) MPT stated in the final infringement contentions:  "Based on MPT's review of the Qualcomm and LGE source code for the accused cell phones in Group LG-1, it appears that the analysis for the MSM6575 Qualcomm chip–both for H.263/MPEG-4 and for H.264–is representative of the infringing functionality and structure of the Group LG-1 products."  (<u>Id.</u> at 6.)  The infringement contentions contained no citations to source code to support MPT's statements that the MSM6575 chip was representative of the

the information required by Patent Local Rules 3.1.c and d.

[4] Former Patent Local Rule 3.7 allowed for the amendment of a party's "Preliminary Infringement Contentions" for any reason other than those allowed by Patent Local Rule 3.6 "only by order of the court, which will be entered only upon a showing of good cause."

[5] MPT's first set of preliminary infringement contentions were served on the Defendants six months after the Court's initial case management conference.  MPT's revised and supplemental preliminary infringement contentions were served on the Defendants one year after the Court's initial case management conference.  MPT's final infringement contentions were served on the Defendants one year and four months after the Court's initial case management conference.  Under the Court's Patent Local Rules, a patentee must serve its infringement contentions no later than fourteen (14) days after the initial case management conference.  Pat. L.R. 3.1.

1    remaining chips.[6]  (See id.)

2        On September 5, 2012, the Court held a telephonic status conference to discuss

3    amendments to the case management scheduling order with the parties.  (10-cv-2618-

4    Doc. No. 298.)  At the hearing, the Court asked the parties to meet and confer and

5    propose any changes to the case management schedule.  (10-cv-2618-Doc. No. 321 at

6    1.)  The parties discussed moving the deadlines for expert discovery back by one week,

7    and the Defendants stated that they would be moving to strike MPT's final infringement

8    contentions.  (See id. at 2-17.)  On September 6, 2012, the Court adopted the parties'

9    proposed revisions to the scheduling order.  (10-cv-2618-Doc. No. 300.)  No party

10   requested a continuance of the trial date.  (10-cv-2618-Doc. No. 299.)  The revised

11   scheduling order moved the deadlines for expert reports back by one week as requested.

12   (10-cv-2618-Doc. No. 300.)

13       On September 10, 2012, LG along with the other Defendants moved to strike

14   MPT's final infringement contentions.  (10-cv-2618-Doc. No. 307.)  On September 28,

15

16       [6] On September 21, 2012, MPT served on LG Dr. Iain Richardson's Infringement

17   Expert Report.  (Doc. No. 75-17, Declaration of Justin Barnes ("Barnes Decl.") Ex. 22.)
     In the expert report, Dr. Richardson stated: "As indicated in the table below, the LG cell

18   phones in Group LG-1 each use one of nineteen different Qualcomm chips.  Based on
     my analysis of the source code I have been able to review and considering the

19   commonality of features in the Qualcomm ARM and DSP hardware and software
     source code for these chips, I believe that all of the Group LG-1 products, i.e., all those

20   using a Qualcomm chip, will encode and decode video in a similar way for purposes of
     my infringement analysis.  Therefore, in reaching my infringement conclusions, I have

21   treated all of the cell phones within Group LG-1 together."  (Id. at 17.)

22       Dr Richardson further stated: "Based on my review of the Qualcomm and LG
     source code for the accused cell phones in Group LG-1, I have determined that my

23   analysis of the source code for the MSM6575 Qualcomm chip–both for the
     H.263/MPEG-4 codec and for the H.264 codec–is representative of the infringing

24   functionality and structure of all of the Group LG-1 products.  I have, therefore,
     presented my infringement conclusions for the Group LG-1 products by comparing the

25   video encoding and decoding functionality of the H.263/MPEG-4 and H.264 codecs in
     the MSM6575 chip, as reflected in the software and hardware source code for these

26   codecs, to the various claims of the patents-in-suit as indicated above.  These
     conclusions are set forth in Appendices A-D, attached hereto and incorporated herein

27   by this reference."  (Id. at 20.)

28

1   2012, the Court granted in part and denied in part LG's motion to strike. (10-cv-2618-
2   Doc. No. 357.) The Court declined to strike MPT's final infringement contentions but
3   –at LG's request–limited MPT's final infringement contentions related to the
4   Qualcomm chips to include only LG accused products that contained the Qualcomm
5   MSM6575 chip. (Id. at 9-11; see also 10-cv-2618-Doc. No. 365 at 45-47.) The Court
6   limited MPT's final infringement contentions because MPT provided only one claim
7   chart for a single Qualcomm chip, the MSM6575 chip, in its final infringement
8   contentions as required by the Patent Local Rules, and MPT had the burden of proving
9   infringement. (Id.)

10      Only after the Court limited the infringement contentions, MPT suggested
11  continuing the trial date so that it could provide more detailed claim charts, and asked,
12  in the alternative, that the Court allow it to file a new complaint against LG. (10-cv-
13  2618-Doc. No. 365 at 48-50.) Defendants opposed continuing the trial date, and the
14  Court declined to continue the trial date. (Id. at 50-51.) The Court's order did not
15  address whether MPT could file a new complaint against LG. (10-cv-2618-Doc. No.
16  357.)

17      On October 4, 2012, Plaintiff MPT filed a motion for reconsideration of the
18  Court's September 28, 2012 Order granting in part and denying in part LG's motion to
19  strike MPT's final infringement contentions. (10-cv-2618-Doc. No. 362.)  In the
20  motion, MPT argued that the Court erred because (1) MPT was diligent with respect to
21  all 19 Qualcomm chips and not just the MSM6575 chip and (2) the MSM6575 was
22  representative of the infringement analysis for the other chips.[7] (See 10-cv-2618-Doc.

23  _____

24      [7] In the motion, MPT stated: "MPT's final contentions presented the MSM6575 chip not as the only basis for infringement of the Qualcomm-based phones, but as necessarily representative of the infringing structures and operation of all the
25  Qualcomm-based LG phones." (Doc. No. 364 at 2.) In its reply, MPT argued that its representative analysis was proper because its infringement contentions were
26  codec-based and not chip-based. (See Doc. No. 404 at 2-5; see also id. at 4 ("In Dr.
27  Richardson's expert opinion, it is the structure and operation of the MPEG-4/H.263 and H.264 codecs within LG's Qualcomm-based phones that causes those phones to
28

No. 364; Doc. No. 404.)   At the hearing on the motion, MPT again suggested continuing the trial against LG, so that it could provide more detailed claim charts.  (10-cv-2618-Doc. No. 471 at 23.)  LG opposed a continuance of the trial date and argued that a continuance would be prejudicial to LG.  (Id. at 24-25.)

On October 19, 2012, the Court denied MPT's motion for reconsideration.  (10-cv-2618-Doc. No. 420.)  The Court agreed with MPT that it had showed it was diligent in pursuing third-party discovery for all 19 Qualcomm chips.  (Id. at 4.)  But, the Court declined to reconsider its prior order limiting the case to the accused products with the MSM6575 chip because the MSM6575 chip was the only Qualcomm accused instrumentality disclosed in MPT's final infringement contentions with claim charts in compliance with Patent Local Rule 3.1(c).  (Id. at 4-9.)  The Court recognized that–in appropriate cases and with adequate support–representative claim charts can be used.  (Id. at 5.)  But, the Court explained that the proposed charts were not appropriate in this case because they provided LG with insufficient notice and did not comply with the Patent Local Rules.  (Id. at 6.)  In reaching its decision, the Court considered the differences in the source code for each codec which varied from chip to chip, the complexity of the accused instrumentalities, and the short time before trial.  (Id.)  In addition, the Court noted that MPT's preliminary infringement contentions provided a claim chart for each of the five Qualcomm chips that MPT had the relevant source code for at that time, not one chart for the five chips.  (Id. at 9.)  The Court also rejected MPT's argument that representative claim charts were appropriate based on third-party discovery and the deadlines for the final contentions.  (Id. at 8-9.)  The Court observed that any potential prejudice to MPT was likely mitigated by its ability to pursue a future action against LG or Qualcomm.  (Id. at 10 n.4.)

On November 8, 2012, MPT filed the present complaint for patent infringement

_____

infringe the '377 and '878 patents, not anything particular having to do with the MSM6575 chip.").)

against LG, alleging that LG is liable for infringement of the '878 Patent and the '377 Patent (collectively the "patents-in-suit"). (Doc. No. 1.) On November 9, 2012, in Case No. 10-cv-2618, the Court held a hearing on Defendants' motions for summary judgment. (10-cv-2618-Doc. No. 607; see also Doc. No. 608 at 24-25 (granting in part and denying in part Apple and LG's motion for summary judgment on estoppel).) LG argued that the Court should dismiss the non-MSM6575 Qualcomm chips with prejudice for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (10-cv-2618-Doc. No. 503 at 5 n.2; Doc. No. 610 at 103-07.) At the hearing, the Court stated that MPT could proceed with the second suit to attempt to prove that the other chips were representative, and that–to the extent necessary–the Court would strike the non-MSM6575 chips without prejudice and sever those chips into the new case. (10-cv-2618-Doc. No. 610 at 101-24.) The Court explained that its intention in limiting the infringement contentions was not to bar MPT from pursuing recovery for the additional chips comprising about 95% of the LG accused products–if the other chips were indeed representative of the MSM6575 chip. (Id. at 112, 116-17, 119-20.) The Court also stated that it would reserve ruling on the res judicata effect of the first trial on the severed action. (Id. at 120.) At the hearing, MPT conceded that the first action would act as a representative case, and also noted that issue preclusion would likely apply in any event to the severed case. (See id. at 116-17 ("Yes. The representative case. I agree, your Honor."); id. at 123 ("Your Honor, I think it would be issue preclusion in any event. . . . If we win or lose on key legal issues, it's going to bind us. Isn't it?").)

At the hearing, LG's counsel asked if the Court would allow the other Qualcomm chips back in the first trial using the MSM6575 chip as a representative of the other chips if his client agreed to withdraw the motion to strike and proceed to trial on all 19 chips. (Id. at 121-22.) The Court stated that it would allow the parties to stipulate that the MSM6575 chip was representative and proceed with a trial on all of the Qualcomm

chips.  (Id. at 122-23; see also 10-cv-2618-Doc. No. 608 at 25 n.13.)  But, the parties did not stipulate that the MSM6575 chip was representative of the other chips, and the Court proceeded with a trial against only LG products containing the MSM6575 chip. (See 10-cv-2618-Doc. No. 859-3, Declaration of Curran Walker ("Walker Decl.") Ex. 2 ("Our client [LG] has decided to proceed on only the products containing the MSM6575 chip for the upcoming trial.").)

Beginning on November 27, 2012, the Court held a jury trial in Case No. 10-cv-2618 on MPT's patent infringement claims against Defendants Apple and LG.[8]  (10-cv-2618-Doc. No. 666.)  On December 13, 2012, the jury returned a special verdict in favor of Defendants Apple and LG and against Plaintiff MPT.  (10-cv-2618-Doc. No. 764.)  The jury specifically found that Apple's accused products do not infringe claims 13, 15, 31, and 32 of the '878 Patent, claim 12 of the '226 Patent, and claims 1, 2, 4, and 8 of the '377 Patent; and found that LG's accused products–the products containing the MSM6575 chip–do not infringe claims 13, 31, and 32 of the '878 Patent and claims 1, 2, and 8 of the '377 Patent.  (Id.)

On February 6, 2013, the Court entered judgment in favor of Apple, LG, and Canon and against MPT.  (10-cv-2618-Doc. No. 828.)  On February 6, 2013, the Court severed, to the extent necessary, the non-MSM6575 Qualcomm chips from that action into the present action.  (10-cv-2618-Doc. No. 826 at 4 n.3; see also 12-cv-2731-Doc. No. 10 at 8:10-8:13.)  See In re EMC Corp., 677 F.3d 1351, 1355 (Fed. Cir. 2012) (stating that a district court has broad discretion in determining whether severance pursuant to Federal Rule of Civil Procedure 21 is appropriate); see, e.g., Arteris S.A.S. v. Sonics, Inc., 2013 U.S. Dist. LEXIS 85370, at *21-22 (N.D. Cal. Jun. 17, 2013).

On February 6, 2013, the Court also held a status conference in the present

---

[8] On November 9, 2012, the Court also granted Canon's motion for summary judgment of its affirmative defense of patent exhaustion, removing Canon as a Defendant from this case.  (10-cv-2618-Doc. No. 608 at 9-10.)

severed case.  (Doc. No. 9.)  MPT explained that it had not yet served LG.  (Id.)  MPT then served LG with the summons and the complaint on February 8, 2013.  (Doc. No. 26.)  On March 1, 2013, LG filed an answer to the complaint.  (Doc. No. 13.)  On March 29, 2013, the Court held a telephonic status and case management conference and issued a scheduling order.  (Doc. No. 32.)

On May 14, 2013, MPT served on LG its infringement contentions and the expert report of Dr. Maja Bystrom, a consulting expert in the prior action.[9]  (Doc. No. 44, Declaration of Justin Barnes ("Barnes Decl") Exs. 5, 9; Doc. No. 53, Declaration of Michael Gray ("Gray Decl.") Ex. 1.)  MPT's infringement contentions divided the accused LG handsets utilizing the non-MSM6575 Qualcomm chips into four different groups of chipsets, and accused the LG handsets of infringing claims 13, 31, and 32 of the '878 Patent and claim 1 of the '377 Patent.  (Doc. No. 53, Gray Decl. Ex 1 at 2, 4, 7, 10, 12.)  On May 17, 2013, LG filed a motion to strike MPT's infringement contentions and expert report.  (Doc. No. 44.)  On May 24, 2013, the Court granted in part and denied in part the motion.  (Doc. No. 54.)  The Court declined to strike the infringement contentions and expert report, but the Court stated that it would preclude MPT from asserting infringement based on the doctrine of equivalents or MPEG-4 Part 2 based on strategic waivers MPT made in the prior action.  (Id. at 5.)  On June 12, 2013, MPT served on LG an amended expert report on infringement.  (Doc. No. 75-5, Barnes Decl. Ex. 6.)

By the present motion, LG moves for summary judgment of issue preclusion or claim preclusion based on the Court's prior judgment in Case No. 10-cv-2618.  (Doc. No. 75.)

---

[9] Prior to serving its infringement contentions, MPT moved for an extension of time, arguing contrary to its earlier representations in Case No. 10-cv-2618 that it needed a large amount of additional source code from Qualcomm to properly generate claim charts for all the Qualcomm chips in this action.  (Doc. No. 36-1; see also Doc. No. 38 at 2 (Order denying MPT's motion).)

**Discussion**

**I.     Legal Standards**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial.  Id. at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.  Celotex, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."  Anderson, 477 U.S. at 256.  "The 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'"  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 265–66 (9th Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

1     When ruling on a summary judgment motion, the court must view all inferences

2 drawn from the underlying facts in the light most favorable to the nonmoving party.

3 Matsushita, 475 U.S. at 587.  The Court does not make credibility determinations with

4 respect to evidence offered.  See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475

5 U.S. at 587).  Summary judgment is therefore not appropriate "where contradictory

6 inferences may reasonably be drawn from undisputed evidentiary facts." Hollingsworth

7 Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

8 **II.   Judicial Estoppel**

9     "Judicial estoppel is an equitable doctrine that prevents a litigant from

10 'perverting' the judicial process by, after urging and prevailing on a particular position

11 in one litigation, urging a contrary position in a subsequent proceeding–or at a later

12 phase of the same proceeding–against one who relied on the earlier position." Sandisk

13 Corp. v. Memorex Prods., 415 F.3d 1278, 1290 (Fed. Cir. 2005); see Hamilton v. State

14 Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  The Supreme Court has

15 identified three factors to guide the court's decision to apply judicial estoppel: (1) the

16 party's later position must be clearly inconsistent with the earlier position; (2) the party

17 must have succeeded in persuading a court to adopt the earlier position in the earlier

18 proceeding, such that it would create the perception that either the first or second court

19 was misled; and (3) the courts consider whether the party seeking to assert an

20 inconsistent position would derive an unfair advantage or impose an unfair detriment

21 on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. 742, 750-51

22 (2001).  In addition, the Ninth Circuit "has restricted the application of judicial estoppel

23 to cases where the court relied on, or 'accepted,' the party's previous inconsistent

24 position." Hamilton, 270 F.3d at 783.  But, the Supreme Court has noted that these

25 factors "do not establish inflexible prerequisites or an exhaustive formula for

26 determining the applicability of judicial estoppel.  Additional considerations may

27 inform the doctrine's application in specific factual contexts." New Hampshire, 532

28

U.S. at 751.  "It is within the trial court's discretion to invoke judicial estoppel and preclude an argument."  Sandisk, 415 F.3d at 1290; see also New Hampshire, 532 U.S. at 750 ("[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'").

A.    Whether MPT is Judicially Estopped

LG argues that MPT is judicially estopped from arguing that the infringement analysis for the Qualcomm chips in this action is materially different from the infringement analysis for the MSM6575 chip based on MPT's prior representations in Case No. 10-cv-2618.  (Doc. No. 75 at 19-22.)

In Case No. 10-cv-2618, MPT repeatedly stated that the MSM6575 chip was representative of the infringement analysis for the other Qualcomm chips utilized in the LG accused products.  (See 10-cv-2618-Doc. No. 328-1, Mathews Decl. Ex. 2 at 6; Doc. No. 364 at 2; Doc. No. 365 at 42-44; Doc. No. 404 at 2-5; Doc. No. 471 at 2, 11, 22-23.)[10]  Now, in the present case, MPT argues there are material differences between

_____

[10] "Based on MPT's review of the Qualcomm and LGE source code for the accused cell phones in Group LG-1, it appears that the analysis for the MSM6575 Qualcomm chip–both for H.263/MPEG-4 and for H.264–is representative of the infringing functionality and structure of the Group LG-1 products." (10-cv-2618-Doc. No. 328-1, Mathews Decl. Ex. 2 at 6.)

"Based on my review of the Qualcomm and LG source code for the accused cell phones in Group LG-1, I have determined that my analysis of the source code for the MSM6575 Qualcomm chip–both for the H.263/MPEG-4 codec and for the H.264 codec–is representative of the infringing functionality and structure of all of the Group LG-1 products." (Doc. No. 75-17, Barnes Decl. Ex. 22 at 20.)

"[MPT's expert] determined that the 6575 could server[sic] as a master, as a representative chip for all of the LG-1 products that use the Qualcomm chips." (10-cv-2618-Doc. No. 46 at 43-44.)

"MPT's final contentions presented the MSM6575 chip not as the only basis for infringement of the Qualcomm-based phones, but as necessarily representative of the infringing structures and operation of all of the Qualcomm-based LG phones . . . ." (10-cv-2618-Doc. No. 364 at 2.)

"MPT's final contentions presented the MSM6575 chip not merely as the only basis for infringement of the Qualcomm-based phones, but as representative of the infringing structures and operation of all of the Qualcomm-based LG phones." (Doc.

the MSM6575 chip and the Group 1, 3 and 4 Qualcomm chips for the purposes of determining infringement.  (Doc. No. 83 at 21-25.)[11]  MPT's current position is clearly inconsistent with its prior position.

MPT argues that the Court did not rely on or accept MPT's prior position because it denied MPT's motion for reconsideration.  (Doc. No. 83 at 9-11.)  The Court disagrees.  In granting in part LG's motion and denying MPT's motion for reconsideration, the Court could have dismissed with prejudice the non-MSM6575 Qualcomm chips for failure to prosecute, eliminating as much as 95% of MPT's potential damages against LG.  Instead, based on MPT's statements that the MSM6575 chip was representative of the chips, and the prejudice that MPT would suffer if 95%

_____

No. 75-19, Barnes Decl. Ex. 25.)

"MPT's Final Infringement Contentions made clear that Dr. Richardson's infringement analysis is based on the MPEG-4/H.263 and H.264 codecs within the Qualcomm chips used in the LG-1 phones, not on any one Qualcomm chip."  (10-cv-2618-Doc. No. 404 at 2.)

"In Dr. Richardson's expert opinion, it is the structure and operation of the MPEG-4/H.263 and H.264 codecs within LG's Qualcomm-based phones that causes those phones to infringe the '377 and '878 patents, not anything particular having to do with the MSM6575 chip."  (10-cv-2618-Doc. No. 404 at 4.)

"Based on my review of hardware source code for various chips, I have determined that Qualcomm has essentially two versions of its QDSP, QDSP-4 and QDSP-5.  Comparing the source code for these two QDSP versions, I have been able to find each of the structures I charted for QDSP-4 used in the MSM6575, for both of the video codecs, in the source code for the QDSP-5, supporting my conclusion that the MPEG-4/H.263 and/or H.264 codecs within the MSM6575 chipset are representative for purposes of my infringement analysis in this case."  (Doc. No. 75-2, Barnes Decl. Ex. 3 ¶ 9.)

"[A]ll the chips had a common nucleus of operative facts, which is source code in the codec that causes the infringement.  . . . We believe that since all the chips have the same infringing source code in their codecs, regardless of other source code, there is no prejudice and we could easily handle this issue."  (10-cv-2618-Doc. No. 471 at 22-23.)

[11] "As Dr. Bystrom explains, unlike Group 2, there are material differences between the source code for the MSM6575 and the source code for the chips in the other chip groups.  These differences are material because they are '[]related to the limitations in the claim[s] of the patent.'  Acumed, 525 F.3d at 1324."  (Doc. No. 83 at 21.)

of its case against LG was dismissed without MPT having a chance to prove that the MSM6575 chip was representative, the Court decided to dismiss the other chips without prejudice and sever them into the present action. (10-cv-2618-Doc. No. 610 at 101-24; Doc. No. 826 at 4 n.3; 12-cv-2731-Doc. No. 10 at 8-16.)  As a result, MPT would still have the ability to seek additional damages against LG if it won the first trial and then proved its claim that the MSM6575 chip was representative after providing LG with adequate infringement contentions on the other chips.

In changing its position about whether the MSM6575 chip was representative of the other chips, MPT seeks to gain an unfair advantage in this suit.  The present action is not a completely new civil action.  The present action was severed from Case No. 10-cv-2618 because MPT failed to provide proper infringement contentions against LG with adequate claim charts for all the Qualcomm chips.  (See 10-cv-2618-Doc. No. 420; Doc. No. 610 at 101-24.)  Despite MPT's failure, the Court decided to sever the non-MSM6575 Qualcomm chips rather than strike them with prejudice based on MPT's claim that the MSM6575 chip was representative of the infringement analysis for the other chips.  The Court permitted MPT to prove that the MSM6575 was representative of the other chips and not lose 95% of its case against LG.  (See Doc. No. 10-cv-2618-Doc. No. 420 at 10 n.4; Doc. No. 610 at 112, 116-17, 119-20; see also 10-cv-2618-Doc. No. 364 at 3, 6-9 (MPT arguing about the prejudice of the Court's prior order); Doc. No. 471 at 2-6 (same); Doc. No. 610 at 116-17 (MPT agreeing that the first action would act as a representative case).)

MPT lost the first trial on infringement against LG.  (10-cv-2618-Doc. Nos. 764, 828.)  Only after losing the first trial, MPT changed its position.  MPT now contends that there are material differences between the Qualcomm chips for the purposes of infringement.  (Doc. No. 83 at 21-25.)  MPT seeks to gain an unfair advantage based on the Court's decision to sever the products into a new action rather than to strike them with prejudice.  MPT should not benefit from its failure to provide proper infringement

1    contentions with adequate claim charts in the first action–a failure that is more

2    egregious if MPT's current position that there are material differences between the

3    chips is correct.

4         The Court, exercising its sound discretion, concludes that judicial estoppel is

5    appropriate.  Accordingly, MPT is judicially estopped from arguing that the Qualcomm

6    chips in this action are materially different for purposes of determining infringement

7    from the allegedly representative Qualcomm MSM6575 chip.

8         B.    Whether LG is Judicially Estopped

9         MPT argues that LG is judicially estopped from arguing that the infringement

10   analysis for the MSM6575 chip is essentially the same as the infringement analysis for

11   the Qualcomm chips in this action based on LG's prior representations in Case No.

12   10-cv-2618.  (Doc. No. 83 at 6-8.)

13        The record shows that LG's current position is not clearly inconsistent with its

14   prior position.  MPT argues that LG previously asserted to the Court that the Qualcomm

15   chips work differently for purposes of determining infringement.  (Doc. No. 83 at 6-8.)

16   MPT is incorrect.  In the prior action, LG argued that the source code for the different

17   Qualcomm chips was different and therefore representative claim charts were

18   inappropriate.  (See 10-cv-2618-Doc. No. 365 at 42-43; Doc. No. 417 at 5-7; Doc. No.

19   471 at 19.)  LG argued that there might be material differences in the infringement

20   analysis for the different Qualcomm chips, but LG explained that it needed adequate

21   claim charts to know whether the infringement analysis was the same or different.  (See,

22   e.g., 10-cv-2618-Doc. No. 471 at 7 ("[LG] would have to then go out and prove that 18

23   other chips work differently or work the same in response to a single conclusory

24   statement from [MPT].");  id. at 19 ("[I]t's quite possible that there may be small

25   changes like that between the different Qualcomm chips.");  see also 10-cv-2618-Doc.

26   No. 417 at 7.)

27        In addition, even assuming LG argued not only that the source code was different

28

but also argued that the differences made the infringement analysis materially different between the chips, the Court did not base its severance on that argument.  The Court has never held–in this action or in the prior action–that the infringement analysis of the MSM6575 is materially different from the infringement analysis for the other Qualcomm chips.  In denying MPT's motion for reconsideration, the Court explained that representative claim charts were inappropriate based on insufficient notice to LG and non-compliance with the Patent Local Rules.  (10-cv-2618-Doc. No. 420 at 6.)  The Court's prior order expressly explained that if MPT had provided adequate claim charts for all the Qualcomm chips, "MPT's expert would be free to testify about the MSM6575 chip and state that the same analysis applies to the other 18 chips, without discussing each chip in detail."  (Id. at 7; see also 10-cv-2618-Doc. No. 610 at 107.) The Court never made a prior determination about whether the MSM6575 chip was representative or not.  (See, e.g., Doc. No. 33 at 2 (explaining that "the real issue in the case is whether [MPT's] original position that [the MSM6575 chip] was representative is correct or not"); see also Doc. No. 10 at 9-10, 21.)  Accordingly, LG is not judicially estopped from arguing that the infringement analysis for the MSM6575 chip is essentially the same as the infringement analysis for the Qualcomm chips in this action.[12]

/// 

/// 

/// 

---

[12] MPT also argues that the law of the case doctrine precludes LG from asserting that the infringement analysis for the MSM6575 chip is essentially the same as the analysis for the Qualcomm chips in this action.  (Doc. No. 83 at 8-9.)  "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).  Because the Court has not previously held that the infringement analysis of the MSM6575 chip is materially different from the infringement analysis for the other Qualcomm chips, the law of the case doctrine does not apply.

12cv2731

1   **II.     Res Judicata - Claim Preclusion and Issue Preclusion**

2          A.     Legal Standards

3          The law of the regional circuit generally governs the determination of whether

4   claim prelusion or issue preclusion applies.  See, e.g., Roche Palo Alto LLC v. Apotex,

5   Inc., 531 F.3d 1372, 1379 (Fed. Cir. 2008) (claim preclusion); Aspex Eyewear, Inc. v.

6   Zenni Optical LLC, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (issue preclusion).

7          In the Ninth Circuit, claim preclusion applies where: "(1) the same parties, or

8   their privies, were involved in the prior litigation, (2) the prior litigation involved the

9   same claim or cause of action as the later suit, and (3) the prior litigation was terminated

10  by a final judgment on the merits." Cent. Delta Water Agency v. United States, 306

11  F.3d 938, 952 (9th Cir. 2002); accord. Roche Palo Alto, 531 F.3d at 1379.  Whether two

12  claims for patent infringement constitute the same claim for claim preclusion purposes

13  is governed by Federal Circuit law.  Roche Palo Alto, 531 F.3d at 1379.  "Under the law

14  of the Federal Circuit, an infringement claim in a second suit is the 'same claim' as in

15  an earlier infringement suit if the accused products in the two suits are essentially the

16  same.  Accused products are essentially the same where the differences between them

17  are merely colorable or unrelated to the limitations in the claim of the patent." Id.

18  (citations and internal quotations omitted).

19         In the Ninth Circuit, issue preclusion applies where: (1) the second action

20  involves the same parties or their privies; (2) the second action is based on the same

21  cause of action; and (3) the issue in question was resolved by a judgment on the merits

22  in the prior suit.  Cent. Delta Water Agency, 306 F.3d at 953. In addition, the issues

23  litigated must be identical.  Id.  For issue preclusion, an accused product is identical to

24  a product in a prior litigation if each product is materially identical.  See Aspex

25  Eyewear, 713 F.3d at 1381; Yingbin-Nature (Guangdong) Wood Indus. Co. v. ITC, 535

26  F.3d 1322, 1333 (Fed. Cir. 2008).

27         The party asserting claim prelusion and/or issue preclusion bears the burden of

28

proving that it applies.  See Roche Palo Alto, 531 F.3d at 1379-80; Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir. 1992); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

B.    Analysis

The same parties, MPT and LG, were involved in the prior litigation, Case No. 10-cv-2618. (See 10-cv-2618-Doc. No. 1; 12-cv-2731-Doc. No.1.)  The prior litigation was terminated by a final judgment on the merits.   (10-cv-2618-Doc. No. 828.) Specifically, in the prior litigation, the jury found that LG's accused products containing the MSM6575 Qualcomm chip do not infringe claims 13, 31, and 32 of the '878 Patent and claims 1, 2, and 8 of the '377 Patent. (10-cv-2618-Doc. No. 764.)  This action involves identical patent claims.  MPT accuses the LG products containing Qualcomm chips other than the MSM6575 chip of infringing claims 13, 31, and 32 of the '878 Patent and claim 1 of the '377 Patent.  (Doc. No. 53, Gray Decl. Ex. 1 at 4, 7, 8, 12.)  Therefore, the only issue remaining for claim or issue preclusion is whether there are material differences for the purposes of infringement between the accused products in this action and the accused products in the prior action.  See Roche Palo Alto, 531 F.3d at 1379; Aspex Eyewear, 713 F.3d at 1381.

LG argues that there are no material differences between the Qualcomm chips in this action and the MSM6575 chip for the purposes of analyzing infringement of the asserted claims. (Doc. No. 75 at 5-13.)  LG's evidence to support its position includes the expert reports of its experts in this action, Dr. Bovik and Mr. Overby, and the expert report and declaration of MPT's expert in the prior action, Dr. Richardson.[13]  (Doc. No.

---

[13] In its opposition, MPT argues that LG has failed to meet its initial burden of presenting sufficient evidence establishing that summary judgment of claim preclusion or issue preclusion is appropriate. (Doc. No. 83 at 11-18.)  Specifically, MPT argues that LG has not presented the Court with a sufficient declaration from its experts or any other expert comparing the source code for the MSM6575 chip and the source code for the other Qualcomm chips and determining there are no material differences between the chips.  (Id. at 5-6, 15-19.)  This argument fails to consider that in moving for summary judgment LG is not simply relying on statements made by its own experts; LG

67, Barnes Decl. Exs. 3, 18-19, 22, 25.)  Here, MPT is judicially estopped from arguing that the Qualcomm chips in this action are materially different for purposes of determining infringement from the Qualcomm MSM6575 chip.  Therefore, there is no genuine dispute of fact that the Qualcomm chips in this action are essentially the same for the purposes of infringement of the asserted claims as the MSM6575 chip litigated in Case No. 10-cv-2618.  Accordingly, the present action is barred both by claim preclusion and by issue preclusion as a matter of law.  See Roche Palo Alto, 531 F.3d at 1379; Aspex Eyewear, 713 F.3d at 1381.

Further, LG submits evidence supporting its position that there are no material differences between the Qualcomm chips in this action and the MSM6575 chip for the purposes of analyzing infringement of the asserted claims.  (See Doc. No. 67, Barnes Decl. Exs. 3, 18-19, 22, 25.)  LG's evidence includes admissions from MPT's expert Dr. Richardson and numerous representations from MPT that the MSM6575 chip is representative of the infringement analysis for all of the accused Qualcomm chips.  (See Doc. No. 75 at 13-17; Doc. No. 67, Barnes Decl. Ex. 3, 22, 25.)  In an effort to create a genuine dispute of material fact on this issue, MPT submits a declaration from its current infringement expert, Dr. Maja Bystrom.  (Doc. No. 83-1, Declaration of Maja E. Bystrom ("Bystrom Decl.").)  MPT argues that the analysis in Dr. Bystrom's declaration shows that there are material differences between the MSM6575 chip and the chips at issue in this case.  (Doc. No. 83 at 18-25.)

Dr. Bystrom focuses her analysis on several means-plus-function claim limitations contained in the asserted claims.  (See Doc. No. 83-1, Bystrom Decl. ¶¶ 15-62.)  Under Federal Circuit law, accused products are essentially the same where the

---

is also relying on the statements made by MPT's prior expert, Dr. Richardson, in his expert report and his declaration containing such an analysis.  (See Doc. No. 75 at 5-7, 13-17; Doc. No. 67, Barnes Decl. Ex. 3 (Dr. Richardson's declaration), Ex. 22 at 17-21 (Dr. Richardson's expert report); see also id. Ex. 25 (declaration from MPT's counsel).)

differences between them are merely colorable or unrelated to the limitations in the claim of the patent. <u>Roche Palo Alto</u>, 531 F.3d at 1379; <u>see also</u> <u>Yingbin-Nature</u>, 535 F.3d at 1333.  Literal infringement of a means-plus-function claim "requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." <u>Odetics, Inc. v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1267 (Fed. Cir. 1999).  By allowing means-plus-function claims to claim equivalent structures, means-plus-function claims "protect the substance of a patentee's right to exclude by preventing mere colorable differences or slight improvements from escaping infringement." <u>Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.</u>, 145 F.3d 1303, 1310 (Fed. Cir. 1998).  An accused structure is equivalent if it "performs the claimed function in substantially the same way to achieve substantially the same result." <u>Id.</u> at 1267; <u>see also</u> <u>Chiuminatta</u>, 145 F.3d at 1309 ("The proper test is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial.").  "[T]he claim limitation is the overall structure corresponding to the claimed function," not the individual components of the structure.  <u>Odetics</u>, 185 F.3d at 1268.  But, differences between the components in the claimed structure and the components in the accused products can be such that it renders the overall structure in the accused products non-equivalent to the overall structure in the specification–in particular where the different and/or missing component is a component that plays a central role in the claimed structure.  <u>See</u> <u>Solomon Techs., Inc. v. ITC</u>, 524 F.3d 1310, 1317 (Fed. Cir. 2008) ("[O]ur case law allows for greater weight to be given to individual components that play a central role in the identified structure."); <u>Toro Co. v. Deere & Co.</u>, 355 F.3d 1313, 1324 (Fed. Cir. 2004).

Dr. Bystrom's analysis examines individual components of the relevant structures and explains that there are some differences in the source code between some of the relevant individual components in the MSM6575 chip and the individual components

in the chips in this action.  (<u>See</u> Doc. No. 83-1, Bystrom Decl. ¶¶ 15-62.)  LG contends that Dr. Bystrom's analysis is insufficient to show that there are material differences between the MSM6575 chip and the chips in this action with respect to the relevant claim limitations.  (Doc. No. 91 at 2, 4-7.)  For a means-plus-function claim, the limitation is the overall structure corresponding to the claimed function, not the individual components.  <u>Odetics</u>, 185 F.3d at 1268.  But, differences between the components in the claimed structure and the components in the accused products may render the overall structure in the accused products non-equivalent to the overall structure in the specification–in particular where the different and/or missing component is a component that plays a central role in the claimed structure.  <u>See</u> <u>Solomon Techs.</u>, 524 F.3d at 1317; <u>Toro</u>, 355 F.3d at 1324.

LG argues that Dr. Bystrom's analysis does not meet the proper standard.  (Doc. No. 91 at 7.)  LG argues that Dr. Bystrom fails to provide a meaningful explanation of how the identified differences in the source code are sufficient to render the overall structures corresponding to the claimed functions materially different between the MSM6575 chip and the chips in this action, particularly in light of the numerous prior representations by MPT to the contrary.  (<u>Id.</u> at 3-4.)  Dr. Bystrom does not opine that some components are in the MSM6575 chip but are missing from the chips in this action, or vice versa.  (<u>Id.</u> at 5.)  Nor does she opine that the MSM6575 chip has a completely different component from the claimed structure where the chips in this action have the same component claimed in the patent, such as arguing that the MSM6575 has an integer transform whereas the chips in this action have a DCT.  (<u>Id.</u>)  Nor does she opine that the differences in the source code are such that the non-MSM6575 chip would satisfy a particular claim limitation when the MSM6575 chips would not.  (<u>Id.</u> at 2 n.1.)  LG argues that, instead, Dr. Bystrom merely points to insubstantial differences and conclusory allegations.  (<u>Id.</u> at 4-6.)

The proper standard is not whether the overall structure is changed even if only

12cv2731

slightly, but whether the overall structures in the accused products corresponding to the structure identified by the Court are materially different due to containing different and/or missing components such that they render the overall structures non-equivalent. See Odetics, 185 F.3d at 1268; Solomon Techs., 524 F.3d at 1317; Toro, 355 F.3d at 1324; see also Chiuminatta, 145 F.3d at 1310.  LG argues that Dr. Bystrom's declaration does not show such material differences.  (Id.)  The Court agrees with LG that Dr. Bystrom's statements merely point to insubstantial differences or are conclusory allegations.[14]

Nevertheless, the Court need not decide whether the declaration is sufficient to create a genuine issue of material fact because MPT is judicially estopped from arguing that the Qualcomm chips in this action are materially different for the purposes of determining infringement from the Qualcomm MSM6575 chip.  Accordingly, LG is entitled to summary judgment on the grounds of both claim preclusion and issue preclusion.  See Roche Palo Alto, 531 F.3d at 1379; Aspex Eyewear, 713 F.3d at 1381.

**Conclusion**

For the reasons stated, the Court grants LG's motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  August 1, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

_____

[14] To aid in its analysis, the Court specifically asked the parties to brief whether the accused products use or possess an integer transform rather than a DCT, a motion compensation type signal, a block type declassifier, a motion vector predictor, leaky prediction, and linear scalar quantization rather than vector quantization. (Doc. No. 39.) Dr. Bystrom's declaration and MPT's opposition failed to adequately respond to the Court's order.